IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KIRISIMASI MASUISUI,<br><br>Defendant. | Case No. 14-cr-00173-DKW<br>Case No. 23-cv-00351-DKW-WRP<br><br>**ORDER (1) DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING A CERTIFICATE OF APPEALABILITY** |

Petitioner Kirisimasi Masuisui moves pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for conspiracy to distribute methamphetamine and cocaine, and possession with the intent to distribute methamphetamine. Within his motion, Masuisui contends that his attorney at sentencing—Catherine Gutierrez—rendered constitutionally ineffective assistance and that he is entitled to the retroactive first-time offender treatment under the November 2023 amendments to the United States Sentencing Guidelines ("U.S.S.G."). Masuisui, however, fails to show that Gutierrez's performance was constitutionally deficient, or that any prejudice resulted from his allegations of the same. Moreover, Masuisui also fails to show that the instant motion is an appropriate means through which to raise his guidelines amendment claim, or even if so, that he would be entitled to a reduction. Accordingly, as more fully

discussed herein, Masuisui's Section 2255 motion, Dkt. No. 570, is DENIED.  As

reasonable jurists would not debate the denial of this motion, a certificate of

appealability is also DENIED.

**FACTUAL & PROCEDURAL BACKGROUND**

## I.     <u>Charges</u>

On October 23, 2014, a grand jury returned a Second Superseding

Indictment ("SSI") against four individuals, including lead defendant Masuisui.

Dkt. No. 88.  Therein, Masuisui was charged with: (1) conspiracy to distribute and

to possess with the intent to distribute fifty grams or more of methamphetamine

and five kilograms or more of a substance containing a detectable amount of

cocaine; and (2) possessing with the intent to distribute fifty grams or more of

methamphetamine—more specifically, approximately 876 grams of "ice".[1]  *Id.*

## II.    <u>Guilty Plea</u>

On November 5, 2014, Masuisui was arraigned on the charges in the SSI and

entered a plea of not guilty.  Dkt. No. 96.  Just two days later, on November 7,

2014, the Court revoked Masuisui's pretrial release status upon finding that he

attempted to contact co-defendant Hobart Auelua[2] via third parties.  Dkt. No. 104.

---

[1]The grand jury had previously returned an Original Indictment on January 30, 2014, *see* Dkt. No. 20, and a Superseding Indictment on April 10, 2014, *see* Dkt. No. 44.  With regard to Masuisui, these earlier indictments did not materially differ from the final operative SSI.
[2]Auelua was charged in the Original and Superseding Indictments, but was not named in the SSI because he had already pled guilty on July 24, 2014.  *See* Dkt. Nos. 20, 44, 86, 88.

Thereafter, on December 12, 2014, Masuisui moved to withdraw his not guilty plea and to plead anew. Dkt. No. 123. At the initial plea hearing, however, Masuisui informed the Court that he felt "woozy" and "cloudy minded" as he had not received his medication that morning. Dkt. No. 182 at 5–7; Dkt. No. 125. Accordingly, the Court continued the plea hearing. Dkt. No. 182 at 8–10; Dkt. No. 125.

Notably, before such hearing could take place, Masuisui requested the withdrawal of two successive court-appointed attorneys—Neal Kugiya and William Domingo. *See* Dkt. Nos. 131, 147. In granting these motions, the Court vacated Masuisui's change of plea hearing and repeatedly set new trial dates. *See* Dkt. Nos. 135, 151. Further, during this time, Masuisui was also evaluated with regard to his mental competency and found to be competent to stand trial. *See* Dkt. No. 167, 178, 263.

Accordingly, on December 19, 2016, Masuisui appeared for a new change of plea hearing. Dkt. No. 302. Represented by his third appointed counsel, Lars

Isaacson,[3] Masuisui pled guilty to both counts of the SSI without a plea agreement. Dkt. No. 315 at 2, 44–45.

## III.   <u>Sentencing</u>

On February 9, 2017, the United States Probation Office filed its draft Presentence Investigation Report ("PSR").  Dkt. No. 333.  Masuisui filed objections, *see* Dkt. No. 382, and a revised PSR followed on June 21, 2017.  Dkt. No. 398.  Therein, Masuisui was held responsible for a total converted drug weight of 87,844.4 kilograms,[4] resulting in a base offense level of 36.  *Id.* at 14.  In addition, the PSR added four levels pursuant to U.S.S.G. § 3B1.1(a) for Masuisui's role as the organizer or leader of a criminal activity involving five or more participants, and two levels under U.S.S.G. § 3C1.1 for obstruction of justice.  *Id.* After subtracting two levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), Masuisui's final total offense level was calculated at 40, which, when combined with his criminal history category of I, resulted in a guideline sentencing range of 292 to 365 months.  *Id.* at 24.  The PSR nonetheless

---

[3]Isaacson had also twice moved to withdraw as counsel prior to the change of plea hearing.  Dkt. Nos. 269, 277.  Both motions were denied upon finding no breakdown in the attorney/client relationship.  Dkt. Nos. 273, 281.

[4]Because Masuisui's offenses involved three different types of drugs—specifically, "ice," generic methamphetamine, and cocaine—the U.S.S.G. required converting each to a standardized converted drug weight.  *See* Dkt. No. 398 at 14; U.S. Sent'g Guidelines Manual § 2D.1 cmt. 8.

recommended that the Court vary downward and sentence Masuisui to 240 months on each count, terms to run concurrently.  *Id.* at 33.

Thereafter, sentencing was continued several times to October 2, 2019.  *See* Dkt. No. 501.  During this interval, four successive attorneys for Masuisui—Lars Isaacson, Megan Kau, Rustam Barbee, and Richard Gronna—withdrew.  Dkt. Nos. 448, 461, 481, 492.  Further, during this same time, Masuisui also filed a motion to withdraw his guilty plea based on his apparent lack of understanding at the plea hearing, which the Court denied.  Dkt. Nos. 464, 471.

At sentencing, Masuisui was represented by his seventh attorney—Catherine Gutierrez.[5]  Dkt. No. 523 at 2.  During the hearing, the Court first denied Masuisui's oral motions to again continue sentencing and for the Court to recuse itself.  *Id.* at 3–6.  Next, the Court heard argument with respect to Masuisui's objections to the PSR.  *Id.* at 10–13.  Specifically, Masuisui contended that: (1) he should not receive a four-level enhancement for an aggravating role in the offense; (2) he should not receive a two-level enhancement for obstruction; and (3) he should receive an extra level of downward variance for a timely plea under U.S.S.G. § 3E1.1(b).  *Id.* at 9–10.  The Court overruled each of these objections, finding that the record provided more than sufficient support for the application of

---

[5]Gutierrez had also previously moved to withdraw.  Dkt. No. 496.  This motion, however, was denied by the Magistrate Judge.  Dkt. No. 503.

the two enhancements as well as for the absence of the Section § 3E1.1(a) decrease. *Id.* at 13–19.

Accordingly, the Court adopted the PSR, finding Masuisui's offense level to be 40, criminal history category to be I, and guideline range to be between 292 and 365 months. *Id.* at 20. After hearing sentencing recommendations from the parties and considering the sentencing factors laid out in 18 U.S.C. § 3553(a), the Court sentenced Masuisui to a bottom-of-the-guideline-range term of imprisonment of 292 months as to each count, terms to run concurrently. *Id.* at 20–27, 31–41.

## IV.   Appeal

Following sentencing, on October 7, 2019, Masuisui filed a notice of appeal. Dkt. No. 511. Thereafter, the Court permitted Gutierrez to withdraw and appointed Cynthia Kagiwada as counsel on appeal. Dkt. Nos. 512–513. On March 17, 2022, the Ninth Circuit Court of Appeals affirmed, concluding that the Court did not abuse its discretion by: (1) denying Masuisui's motion to withdraw his guilty plea; (2) applying a two-level enhancement for obstruction of justice; (3) finding that Masuisui was the organizer or leader of a conspiracy involving five or more persons; and (4) denying Masuisui's motion for a seventh continuance of his sentencing hearing. Dkt. No. 562. After the Ninth Circuit denied Masuisui's

petition for panel rehearing and rehearing *en banc*, *see* Dkt. No. 564, his judgment

became final as of May 4, 2022.  Dkt. No. 563.

## V.   Section 2255 Motion

On July 20, 2023, Masuisui, proceeding *pro se*, filed the instant Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in

Federal Custody ("Section 2255 Motion").[6]  Dkt. Nos. 570–571.  Therein,

Masuisui asserts that Gutierrez rendered ineffective assistance of counsel at

sentencing pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.*

Further, Masuisui also contends that he is retroactively entitled to first-time

offender treatment under the 2023 amendments to the United States Sentencing

Guidelines.  Dkt. No. 570 at 5; Dkt. No. 571 at 9; *see* U.S.S.G. amend. 821 pt. B.

On November 16, 2023, the Government filed its brief in opposition.  Dkt.

No. 578.  Masuisui replied on January 19, 2024.  Dkt. No. 579.  This Order now

follows.

## STANDARD OF REVIEW

Pursuant to Title 28 of the United States Code, Section 2255, "[a] prisoner in

custody under sentence of a court established by Act of Congress . . . may move

---

[6]Although Masuisui's motion was not received by the Court until August 21, 2023, pursuant to
the prison mailbox rule, a motion filed by an incarcerated defendant is deemed filed as of the
date it is given to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 275–76
(1988); Dkt. No. 570 at 12 (certifying Masuisui placed his motion in the mail on July 20, 2023).

the court which imposed the sentence to vacate, set aside, or correct the sentence."
28 U.S.C. § 2255(a).  The sentencing court may grant such relief if it concludes
"that the sentence was imposed in violation of the Constitution or laws of the
United States, or that the court was without jurisdiction to impose such sentence, or
that the sentence was in excess of the maximum authorized by law, or is otherwise
subject to collateral attack."  *Id.*

## DISCUSSION

### I.   Ineffective Assistance of Counsel

Masuisui's motion primarily asserts that Gutierrez provided ineffective
assistance of counsel at sentencing.  Specifically, Masuisui contends that Gutierrez
was ineffective in her failure to "argue, object and preserve for appellate review":
(1) the Government's failure to prove the purity of the methamphetamine for
which he was responsible; (2) the application of the aggravating role enhancement
under U.S.S.G. Section 3B1.1; and (3) his eligibility for the safety valve.[7]  Dkt.
No. 571.  Accordingly, the Court begins with the legal framework for such claims.

The Sixth Amendment guarantees criminal defendants the right to the
effective assistance of counsel at all critical stages of a criminal proceeding,

---

[7]Masuisui claims that he did not raise these issues on direct appeal as these "claims have recently been developed."  Dkt. No. 570 at 4.  Notably, however, Masuisui raised at least the aggravating role enhancement on direct appeal.  *See* Dkt. No. 562 at 2–3.  Moreover, to the extent he is correct with regard to his other claims, it is unclear how his counsel at sentencing could have been ineffective on those grounds for the reasons explained below.

including sentencing. *Strickland*, 466 U.S. at 684–86; *United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997). To prevail on a claim of ineffective assistance of counsel, the defendant must establish: (1) that "counsel's representation fell below an objective standard of reasonableness"; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. In other words, the petitioner must show both that counsel's performance was deficient *and* that the deficiency was prejudicial. *Id.* at 687. The Court has discretion over the sequence in which to conduct this inquiry and may decline to "address both components of the inquiry if the [petitioner] makes an insufficient showing on one." *Id.* at 697.

When evaluating deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Accordingly, although the Court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Therefore, "conclusory allegations unsupported by specifics [are] subject to summary dismissal, as are contentions

that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

### a.   Ground 1: Drug Purity

Masuisui first contends that Gutierrez was constitutionally ineffective by failing to "argue, object and preserve for appellate review the government's failure to prove the drug 'methamphetamine' was mixed or pure." Dkt. No. 571 at 3. According to Masuisui, as "the sentences are greatly different between mixed or pure . . . there is a reasonable probability that, but for trial counsel's unprofessional errors, the results of the [sentencing] proceeding would have been different by a '51–63 months' sentence to '97–121 months.'" *Id.* at 4.

This argument is unavailing as Gutierrez's alleged failure to raise a methamphetamine purity challenge makes no difference to Masuisui's base offense level, or his resulting sentencing guideline range. Significantly, within the PSR, Masuisui was held responsible for three different drugs: (1) 879.5 grams of "ice;" (2) 34,927.2 grams of generic methamphetamine; and (3) 2,000 grams of cocaine. Dkt. No. 398 at 14. Therefore, to calculate his base offense level, these disparate substances were first separately converted into standardized drug weights of 17,590.0 kilograms, 69,854.4 kilograms, and 400 kilograms, respectively. *Id.*; *see also* U.S. Sent'g Guidelines § 2D1.1 cmt. 8(B), cmt. 8(D) (reflecting a 10-to-1 conversion rate disparity between pure and generic methamphetamine). These

standardized drug weights were then aggregated for a total combined weight of 87,844.4 kilograms.  Dkt. No. 398 at 14.

Under the U.S.S.G. Drug Quantity Table, offenses involving at least 30,000 kilograms but less than 90,000 kilograms of converted drug weight result in a base offense level of 36.   *See* U.S. Sent'g Guidelines Manual § 2D1.1(c)(2). Accordingly, although Masuisui's base offense level was calculated from his total converted drug weight, the determinative factor was the vast quantity of *generic methamphetamine* for which he was held responsible.[8]  *See* Dkt. No. 398 at 14. Indeed, even if Masuisui were being held responsible *solely* for this amount, his base offense level would not have changed.[9]  *See id.*; U.S. Sent'g Guidelines Manual § 2D1.1(c)(2).  As generic methamphetamine is converted at a *lower* rate than pure methamphetamine, Gutierrez's purported failure to raise a challenge to the purity of the methamphetamine had no effect on the calculation of Masuisui's offense level or his subsequent sentencing guideline range.  *See* U.S. Sent'g Guidelines Manual at § 2D1.1 cmt. 8(D).  Masuisui has failed to show any

---

[8]Notably, Masuisui does not dispute the *quantity* of methamphetamine for which he was held responsible, but only the *purity* of the same.

[9]To the extent that Masuisui challenges the purity of the "ice" for which he was held responsible, he again fails to show any prejudice as such quantity did not increase his offense level beyond that already triggered by the quantity of generic methamphetamine.  *See* Dkt. No. 398 at 14; U.S. Sent'g Guidelines Manual § 2D1.1(c)(2); *see also* Dkt. No. 315 at 37–38 (admitting, at the change of plea hearing, that he had no reason to dispute the laboratory results as to the purity of the "ice.").

prejudice, and his claim of ineffective assistance of counsel is accordingly denied in this regard.[10]

### b.  <u>Ground 2: Leader/Organizer Enhancement</u>

Masuisui additionally contends that Gutierrez "failed to; argue, object and preserve for appellate review the government's failure to provide proof of petitioner being 'a manager/supervisor' of a drug organization that would require a multi-level enhancement." Dkt. No. 571 at 6.  Under U.S.S.G. § 3B1.1, a sentencing court may:

> Based on the defendant's role in the offense, increase the offense level as follows:
>
> > (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

---

[10]In his reply brief, Masuisui raises, for the first time, two additional arguments with respect to this claim.  First, Masuisui appears to argue that Gutierrez was ineffective in failing to challenge the purity of the methamphetamine because she knew he was on "Trazidone [sic], a psychotropic drug" which "result[ed] in delusions and loss of contact with external reality." Dkt. No. 579 at 4–7.  Second, he claims that she was ineffective in failing to challenge the purity of the methamphetamine because she failed to argue that the Government falsely represented that Masuisui had admitted to trafficking large quantities of methamphetamine at the time of his arrest.  *Id*.  Both claims lead to no different results.  As an initial matter, not only is it entirely unclear how either of these arguments are related to the methamphetamine purity claim, but both arguments are foreclosed because Masuisui raises them now for the first time in reply.  *See* LR 7.2 ("Any argument raised for the first time in the reply shall be disregarded.").  Moreover, to the extent that Masuisui argues that he was unable to aid in his own defense due to his medicated state, such claims are explicitly belied by the Court's multiple inquiries as to Masuisui's medications and mental capacity.  *See* Dkt. No. 315 at 4–6 (admitting that Trazodone neither affected his memory nor his ability to pay attention in court proceedings).  Finally, as detailed *supra* 10–12, Masuisui cannot, in any case, establish any prejudice resulting from Gutierrez's purported inactions with respect to challenging the methamphetamine's purity.  As such, neither argument provides a basis for relief.

> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by **3** levels.

U.S. Sent'g Guidelines Manual § 3B1.1(a)–(b).  In Masuisui's case, the PSR recommended that the four-level leader/organizer enhancement be applied as the evidence established that Masuisui helped organize a conspiracy of over five persons, recruited new participants to the same, and controlled the flow and sale of methamphetamine and cocaine from California to Hawaiʻi.  Dkt. No. 398 at 14. Nevertheless, Masuisui now argues that he "was one of several alleged co-conspirators" and, as such, "there was no reasonable basis" for his attorney's failure to object to the PSR, which resulted in him "receiving a hideous and shocking sentence of 292 months for his very first offense."  Dkt. No. 571 at 6–9.

As an initial matter, Masuisui is simply wrong as to the factual basis for this claim.  His previous attorney—Lars Isaacson—did file objections to the application of a three-level manager/supervisor enhancement and/or a four-level leader/organizer enhancement.  *See* Dkt. No. 382 at 6–7.  Moreover, Gutierrez agreed with these objections and argued them at sentencing, thereby preserving them for appellate review.  *See* Dkt. No. 523 at 9–10 ("the argument there is that it should be either a two or three-level rather than the four.  And I would stand on the same arguments that the numbers are not there.").  Indeed, Masuisui actually raised these issues on appeal, and the Ninth Circuit affirmed, finding that the Court had

- 13 -

"adequately set forth reasons for finding Masuisui was an organizer or leader within the conspiracy, including his control over shipments between San Francisco and Hawaii, setting prices, and directing others where and when to transport drugs and/or currency." Dkt. No. 562 at 3. As such, this contention simply lacks merit.

Moreover, to the extent that Masuisui contends that Gutierrez was somehow deficient with respect to arguing this objection, he fails to show any prejudice resulted from the same. Notably, Masuisui provides minimal factual detail to support his claims that he should not be properly characterized as either a manager/supervisor or a leader/organizer of the conspiracy. Rather, he summarily claims that "the (P.S.R.) erroneous enhancement came mainly from a co-conspirator's false statement regarding petitioner as the leader of a 'drug trafficking organization'" and that he cannot be the leader/organizer because another co-conspirator—Aaron Dan—already received the same enhancement. Dkt. No. 571 at 8; Dkt. No. 579 at 8–10; Dkt. No. 579-5 at 7–8. Masuisui fails, however, to identify which co-conspirator the enhancement "mainly" came from, or how such statements were false. Moreover, he also ignores that there can "be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S. Sent'g Guidelines Manual § 3B1.1 cmt. 4; *see* *United States v. Ray*, 735 F. App'x 290, 294 (9th Cir. 2018). The finding with respect to Aaron Dan is thus irrelevant.

Further, in overruling Gutierrez's objection, the Court explained at length

that Masuisui was receiving the four-level enhancement because:

> The defendant's admitted role in this conspiracy shows that he was an organizer and leader.  The defendant obtained massive quantities of both methamphetamine and cocaine from his California source of supply.  He then arranged to have these drugs smuggled into Hawaii via SFO using couriers that he recruited.  Those couriers, include[ed] the codefendant Mr. Auelua, who, as I said earlier, pled guilty and has been sentenced by this Court.
>
> The defendant paid for the services of this courier as well as his travel expenses.  The defendant, in other words, decided how much to pay to others that he directed, and the defendant decided what those others would actually do.  Once the drugs were on island, the defendant retook possession of these drugs, sold them to subdistributors, such as Mr. Dan and Mr. Lum, and the defendant did this on numerous occasions to which he admitted and to which Mr. Auelua and Mr. Dan admitted, as well as Mr. Lum, involving dozens of kilograms of both methamphetamine and cocaine.
>
> Among other things, the defendant negotiated the sales price of these drugs, collected drug proceeds, and arranged for the transportation of those proceeds back to California.  That's sufficient—at least in my estimation more than sufficient for the application of the four-level enhancement.  And for that reason the objection to the four-level enhancement being applied is overruled.

Dkt. No. 523 at 14–15.  Notwithstanding the existence of other participants in the

conspiracy, the record in this case is replete with evidence—beyond simply co-

conspirator statements—that supports Masuisui's role as one of the

organizers/leaders of the organization, and, therefore, the application of the four-

level enhancement.[11]  *See, e.g.*, Dkt. No. 315 at 31–44 (Masuisui admitting at his change of plea hearing that he directed drug couriers, supplied drugs to others within the conspiracy, and was "probably the third man from the top");[12] Dkt. No. 578-2 (explaining that Gutierrez's review of the discovery also supported the same conclusion).  Indeed, as explained previously, the Ninth Circuit has already affirmed the same.  *See* Dkt. No. 562 at 2–3.  As Masuisui therefore fails to establish that different or more strenuous argument would have altered the outcome, the Court does not find that he was rendered ineffective assistance in this regard.[13]

---

[11]Although an "organizer or leader is a more significant and culpable role than a manager or supervisor . . . the least common denominator needed to establish *any* such role is that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime."  *United States v. Ehmer*, 87 F.4th 1073, 1144 (9th Cir. 2023) (quotation marks and citations omitted).  As such, in finding satisfactory factual basis for the organizer/leader enhancement, the Court also found satisfactory factual basis for the manager/supervisor enhancement.

[12]In his reply brief, Masuisui seeks to strike the transcript of the plea hearing as "having no practical significance" as Gutierrez did not represent him at that time.  Dkt. No. 579 at 2.  However, his statements at that hearing are directly relevant to establishing the basis for the aggravating role enhancement, and therefore, to evaluating prejudice.  This request, is therefore, denied.

[13]Further, as Gutierrez acknowledges, to press the issue further could "run contrary to his taking responsibility and/or contradict statements Mr. Masuisui had already made to the Court and run the risk of losing the 2-level downward adjustment [for acceptance of responsibility]."  Dkt. No. 578-2 at 13.  Indeed, the Court already had come very close to revoking the same.  *See* Dkt. No. 523 at 37–38 ("In Mr. Masuisui's allocution, I noted, and I was extremely tempted . . . to revoke the 3E1.1A, two points for acceptance of responsibility.  Because in his remarks this afternoon, on at least two occasions, it appeared to me pretty clear that he was doing anything other than accepting responsibility.").

c.   **Ground 3: Safety Valve**

Next, Masuisui contends that Gutierrez was constitutionally ineffective as she "failed to; raise, argue, and preserve for appellate review the 'safety valve sentence,' petitioner could have received."  Dkt. No. 571 at 5.  The "safety valve" is a provision under Title 18 of the United States Code, Section 3553(f) which "allows a district court to sentence a criminal defendant below the mandatory-minimum for certain drug offenses if the defendant meets the criteria in § 3553(f)(1) through (f)(5)."  *United States v. Lopez*, 998 F.3d 431, 432 (9th Cir. 2021).  Here, although Masuisui acknowledges that "[t]here are five parts of the 'safety valve application'," he claims that he is eligible for the safety valve because he meets the requirements of the first element, which states:

> (1) the defendant does not have—
>
>> (A) more than 4 criminal history points, excluding any criminal history points resulting from a 1-point offense, as determined under the sentencing guidelines;
>>
>> (B) a prior 3-point offense, as determined under the sentencing guidelines; and
>>
>> (C) a prior 2-point violent offense, as determined under the sentencing guidelines.

18 U.S.C. § 3553(f)(1).  As Masuisui was a "first-time non-violent offender," he claims that his counsel was clearly ineffective in failing to argue for the application of the safety valve under this provision.  Dkt. No. 571 at 5–6.  This alleged failure

made "the difference between a sentence below '10-year minimum' and a sentence over a '10 year minimum.'"  *Id.* at 6.

Masuisui is correct in stating that he did not have any criminal history points and thereby met the requirements of Section 3553(f)(1).  *See* Dkt. No. 398 at 15. A defendant, however, must meet *all five factors* to be eligible for the safety valve. *See United States v. Rangel-Guzman*, 752 F.3d 1222, 1226 (9th Cir. 2014). Moreover, at least two of the remaining five factors render Masuisui explicitly *ineligible* for the application of the safety valve.  In particular, Sections 3553(f)(4) and (5) provide that to be eligible for the safety valve, a defendant must show that:

> **(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense,** as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, **the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses** that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(4)–(5) (emphases added).

Here, as the Court has already explained at length *supra* 12–16, Masuisui was determined to be an organizer, leader, manager, or supervisor of at least five

other participants in the instant drug distribution conspiracy and received a four-level sentencing enhancement pursuant to the same. *See also* Dkt. No. 523 at 13–15 (explaining the factual basis for the Court's application of the sentencing enhancement). That determination was affirmed by the Ninth Circuit on direct appeal. Dkt. No. 562. Moreover, the record contains no evidence to suggest that Masuisui truthfully provided the Government with any information he had regarding the drug distribution conspiracy. *See* Dkt. No. 578-2 at 11 (explaining "Mr. Masuisui had participated in a proffer meeting with the Government once or twice and the Government deemed his statements as untruthful."). Rather, Masuisui actively attempted to *interfere* with the Government's investigation. *See* Dkt. No. 523 at 15–17 (applying a two-level sentencing enhancement for obstruction of justice after Masuisui attempted to discourage co-defendant Hobart Auelua from cooperating). Accordingly, under the explicit text of the statute, Masuisui was ineligible for the safety valve. Masuisui therefore fails to show that Gutierrez's decision not to pursue such reduction was objectively unreasonable, or that he experienced prejudice resulting from the same. As such, the Court does not find that Gutierrez rendered constitutionally ineffective assistance in this regard.

## II. <u>First Time Offender Status Under the Sentencing Guidelines</u>

In addition to his ineffective assistance of counsel claims, Masuisui asserts that "the United State[s] Sentencing Commission has recommended *no*

*incarceration* for first-time offenders and it should be retroactively applied." Dkt. No. 570 at 5 (emphasis added). Liberally construed, this argument appears to refer to Amendment 821, Part B to the United States Sentencing Guidelines, which altered Section 4C1.1 to permit certain zero-point offenders to qualify for a two-level reduction to their offense level upon meeting specific criteria. *See* U.S. Sent'g Guidelines Manual § 4C1.1.

As an initial matter, it is far from clear that the instant motion is the appropriate means through which to raise this argument. *See Hamilton v. United States*, 67 F.3d 761, 763–64 (9th Cir. 1995) (explaining that claims based on the district court's alleged failure to apply a guideline that was not effective at the time of sentencing are not cognizable under Section 2255). Nevertheless, even if it is, Masuisui's argument is unavailing.

First, Masuisui fails to establish that he is even eligible for the aforementioned sentencing guideline amendment. Masuisui appears to predicate his argument on the fact that he is a "first-time offender" and therefore, has a criminal history score of zero. Dkt. No. 570 at 5; Dkt. No. 571 at 9. Though this may be true, such status is only one criterion to be eligible for the adjustment. *See* Dkt. No. 398 at 15; U.S. Sent'g Guidelines Manual § 4C1.1(a). There are *nine other factors* which the defendant must meet—none of which Masuisui addresses in his motion. *See* U.S. Sent'g Guidelines Manual § 4C1.1(a)(2)–(10). Indeed, for

the reasons the Court detailed *supra* 12–16, it appears that at least one of the other factors is explicitly *disqualifying*.  *See* U.S. Sent'g Guidelines Manual § 4C1.1(a)(10) (explaining that to qualify for the new zero-point offender reduction, the defendant must not have received an adjustment under § 3B1.1 (Aggravating Role)); Dkt. No. 523 at 13–15 (applying a four-level aggravating role enhancement under U.S.S.G. § 3B1.1(a)).   That may be the very reason Masuisui does not mention the other criteria he must meet.

Second, *even if* Masuisui met all of the Section 4C1.1 criteria and was eligible for the two-level reduction, such adjustment would only decrease his offense level from 40 to 38.  An offense level of 38, when coupled with Masuisui's criminal history category of I, would result in an updated guideline range of 235 to 293 months—nowhere close to the *zero months* to which Masuisui contends he is entitled.  *See* U.S. Sent'g Guidelines Manual ch. 5 pt. A.  Indeed, Masuisui's current 292-month sentence—which fell at the low end of his original sentencing range—would still fall within this updated range.  *See id.*  To reach a zero-month sentence from the updated guideline range would require a downward departure of *thirty levels*—something the Court, perhaps obviously, declines to do.[14]

---

[14]In fact, in modifying a defendant's sentence based on a retroactive amendment to the sentencing guidelines,"[c]ourts generally may not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range produced by the substitution."  *Dillon v. United States*, 560 U.S. 817, 827 (2010) (quotation marks and citation omitted); *see also* U.S. Sent'g Guidelines Manual § 1B1.10(b)(2)(A) (same).

Finally, in deciding whether to reduce a defendant's sentence pursuant to a retroactive amendment to the U.S.S.G., the Court must consider both the extent of the modification and the sentencing factors set forth in 18 U.S.C. § 3553(a). *Dillon*, 560 U.S. at 826–27.  These include, *inter alia*, the nature and circumstances of the offense, the personal history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence, and protect the public.  18 U.S.C. § 3553(a).  At sentencing, in considering these factors, the Court found a sentence of 292 months was sufficient, but not greater than necessary to achieve the sentencing goals set forth in that statute.  *See* Dkt. No. 523 at 32–37.  Here, Masuisui has provided no reason for the Court to believe that anything has changed with respect to the same.  Accordingly, the Court does not find that a reduction would be, in any case, warranted pursuant to 18 U.S.C. § 3553(a).

For all of the foregoing reasons, this ground for relief is denied.

## III.   <u>Evidentiary Hearing</u>

In his reply brief, Masuisui requests an evidentiary hearing on his assorted claims.  Dkt. No. 579 at 3, 10.  Pursuant to 28 U.S.C. § 2255(b), the Court must grant such requests "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

Here, as discussed above, the record conclusively demonstrates that Masuisui is not entitled to relief for either his ineffective assistance of counsel claims or his sentencing guidelines claim. The Court therefore finds that no evidentiary hearing is necessary or warranted.

## IV. <u>Certificate of Appealability</u>

In denying Masuisui's Section 2255 Motion, the Court must address whether he is entitled to a Certificate of Appealability ("COA"). *See* R. 11(a), Rules Governing Section 2255 Proceedings. The Court may only issue a COA where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, the applicant must show that "reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citations and quotation marks omitted).

Here, in light of the analysis and findings above, the Court finds that reasonable jurists would not debate the resolution of Masuisui's claims. Accordingly, the Court declines to issue a COA.

## <u>CONCLUSION</u>

For the reasons set forth herein, Petitioner Masuisui's Motion Under 18 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person is Federal

- 23 -

Custody, Dkt. No. 570, is DENIED.  Further, a Certificate of Appealability is also

DENIED.

The Clerk of Court is directed to enter Judgment in favor of Respondent, the

United States of America, and then to close Case No. 23-cv-00351-DKW-WRP.

IT IS SO ORDERED.

DATED: February 26, 2024 at Honolulu, Hawai'i.


Derrick K. Watson
Chief United States District Judge


_United States of America v. Kirisimasi Masuisui_; Cr. 14-00173 DKW and Civ. 23-00351 DKW-WRP**; ORDER (1) DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY; AND (2) DENYING A CERTIFICATE OF APPEALABILITY**